## HORN v. BRATTON.

4-8692                                          216 S. W. 2d 794

Opinion delivered January 17, 1949.

*W. F. Reeves* and *N. J. Henley,* for appellant.

*Wm. T. Mills* and *Opie Rogers,* for appellee.

SMITH, J. Appellant is the owner of the S½ of the S½ of the SW¼ of Sec. 8, T. 14 N., R. 15 W., and appellee is the owner of the E½ of the NW¼ of Sec. 17, T. 14 N., R. 15 W. The tract last described joins and is south of the former.

For many years a public road ran between these tracts of land, which was abandoned and its use as a road discontinued when Highway No. 65 was constructed, which runs along the east line of both tracts.

Appellant, the plaintiff below, filed a complaint in which he alleged that appellee "has a fence built on the line between his said lands and this plaintiff's land and there is a large field of fertile and productive land lying due south of plaintiff's field and extending west from

U. S. Highway No. 65 to the foot of a steep mountain, the northwest corner of said field being the full extension of the old wagon road to the foot of said mountain and divided from the southwest corner of plaintiff's field only by the old wagon road.

"Some 22 rods, or about 121 yards south of said corners at the end of said old road, there is a hollow which runs down the steep mountain slope with a wide drainage, the waters from which during heavy rains have for all time past emptied into and run through the fields and lands of the defendant herein to the highway ditch and thence back to the mouth of the old road where there is a culvert under the Highway 65 dump and road bed and thence into Cove Creek."

That the defendant has filled up said hollow 22 rods south of plaintiff's field, constructing an embankment of rock and dirt across said hollow higher than the natural level of the lands on each side of said hollow, and has cut a ditch along the foot of the mountain for a distance of 22 rods, throwing both the dirt and rocks to the lower side of said ditch, thereby turning all the surface water from said hollow off of defendant's field and throwing it onto the plaintiff's land. It was alleged that if defendant is permitted to turn the water from his hollow as he is attempting to do, it will completely destroy the road and will overflow the plaintiff's field and do him irreparable damage every time there is a flood or heavy rain, and the lower part of plaintiff's field will be overflowed.

Wherefore it was prayed that defendant be permanently restrained from turning the water from his land onto the plaintiff's land and that a mandatory injunction issue requiring the defendant to fill the ditch made by him.

In his answer appellee denied that there was an extensive hollow south of plaintiff's southwest corner, and denied "that drainage runs through his fields and back up to the mouth of the old road and across any culvert on U. S. Highway 65 near the lands of this plain-

tiff, as alleged in the complaint.'' The answer denied that any diversion of surface water which appellee has made will overflow the road at all or overflow the plaintiff's field or otherwise damage him.

It appears from this statement of the issues raised by the complaint and answer that the complaint presents the definite question of fact, whether appellee has impounded and diverted water causing appellant's land to overflow and be damaged. Testimony was offered upon this issue and the complaint was dismissed as being without equity, thus reflecting the finding that appellee's action had occasioned appellant no damage. As this finding does not appear to be contrary to the preponderance of the evidence, the decree must be affirmed.

Appellant's testimony consists principally of opinions expressed that at some future time appellant's land may be damaged, but it is conceded that this anticipated damage has not yet occurred.

Appellee's testimony is to the effect that the configuration of the land is such that appellee's dam and ditch have not and will not impound and cast water upon appellant's land.

Appellee constructed a pond on his land which appears to have caused some apprehension as to its drainage to appellant's land. This pond was constructed under the supervision of a representative of the Federal Soil Conservation Service, who has had ten years' experience in that service. This witness testified that he made a survey of the spillway running north of the pond to the old road bed, and as to the disposition of the water which it impounded and he testified as follows:

''Q. The spillway, I believe, runs north of the pond to an old road bed? A. Yes, sir. Q. From there where would the water be carried? A. From the old road to the highway ditch. Q. Is that roadway a ditch? A. We would call it a ditch. Q. Tell the court whether that ditch would be sufficient to carry all that water coming down from the spillway. A. Yes, sir. Q. Tell the court whether or not that would be based on the heaviest rain in this

county? A. Based on the heaviest rain that has fallen in 50 years. Q. Based on an estimate of the largest rain that has fallen in 50 years? A. Yes, sir.''

On his cross-examination the witness was asked:

''Q. In the natural flow, where would that water naturally flow? A. Across the field. Q. What field. A. Tony Bratton's field. (Bratton is the appellee.) Q. Would it have had a tendency to flow toward any of the Horn land or the old road? A. No. Q. Isn't it a fact or had you observed, Mr. Johnson, that over a period of years that water had worn a ditch over the Tony Bratton land and went on out to the highway 65, wasn't that its natural tendency at the time? A. It was. Q. You are basing your opinion on the largest rainfall in 50 years, do you have a record of that? A. We have figures over at the office.''

Appellant does not testify nor offer proof to show that appellee has yet cast any water on his land, but appellant's apprehension is that this will occur in case of excessive rainfall. But this appears to be surmise and conjecture and the positive testimony is to the effect that appellant has not yet suffered any damage as a result of appellee's acts complained of.

The court, therefore, properly dismissed the complaint as being without equity and that decree is affirmed.